[S. F. No. 291.    Department Two.—December 7, 1896.]

D. C. M. GOODSELL, RESPONDENT, v. THOMAS ASHWORTH ET AL., APPELLANTS.

ACTION FOR NEGLIGENCE OF SUPERINTENDENT OF STREETS — USELESSNESS OF ACCEPTED SEWER—OFFICIAL GRADE—OPINION EVIDENCE.—In an action upon the official bond of the superintendent of streets, for his alleged neglect of official duty in accepting a useless sewer, which was not built according to the plans and specifications required by the contract, where it is established that the sewer was constructed according to the official grade of the street, the opinion of a witness that the sewer was of no use to the property assessed for its construction, based upon the theory that it was constructed on the wrong grade, and should have been placed further down in the ground, is of no weight and entitled to no consideration.

ID. — FINDING AGAINST EVIDENCE — VALUE OF SEWER. — Where the evidence showed that the sewer contracted for and constructed was five hundred and sixty feet in length, and that only one hundred and sixty-three feet of it was cracked in various places, and that the remainder was in good condition, and it was proved without conflict that water and sewage were passing through the sewer without any apparent leakage, although plaintiff's evidence tended to show that, in order to put the sewer in good condition, it was necessary to reconstruct one hundred and sixty-three feet of it, there is no warrant for a finding that the sewer was valueless for the purposes for which it was intended.

ID. — MEASURE OF DAMAGES TO OWNER OF LOT ASSESSED—PROPORTIONATE COST OF COMPLETING SEWER.—An owner of a lot which has been assessed for the construction of a sewer, cannot recover upon the bond of the superintendent of streets for official neglect in accepting a sewer not constructed in accordance with the contract and specifications, the full amount paid to discharge the assessment against him, where the sewer is not wholly valueless, but can only recover his proportion of the amount required to place the sewer in good condition, so as to meet the requirements of the specifications.

ID. — APPEAL—LAW OF THE CASE—DEMURRER—TRIAL OF ISSUES. —The decision upon a former appeal rendered upon demurrer to the complaint, that one who claimed to have been injured in his property, in consequence of the official neglect of the superintendent of streets in accepting a sewer not built according to specifications of the contract, has a remedy by action against the superintendent and the sureties on his bond, is not the law of the case, upon the trial of issues as to whether the sewer was valueless for the purposes for which it was intended and as to the amount of damages sustained by the plaintiff.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. C. B. HEBBARD, Judge.

The facts are stated in the opinion.

*John T. Humphreys, W. C. Burnett, L. G. Burnett,* and *J. F. Tevlin,* for Appellants.

The supreme court did not fix the rule of damages in this case when it was before it. The facts are not the same in the case as now presented. (*Huse* v. *Den,* 85 Cal. 390; 20 Am. St. Rep. 232; *Goodsell* v. *Ashworth,* 96 Cal. 397.)

*Edward R. Taylor,* for Respondent.

The rule of the law of the case is applicable to decisions on demurrer. (*Lucas* v. *San Francisco,* 28 Cal. 592.)

Belcher, C.—On the sixth day of February, 1890, the board of supervisors of the city and county of San Francisco, after the necessary preliminary proceedings had been taken therefor, awarded to one Thomas Philbin a contract to construct a brick sewer, of certain dimensions and according to certain specifications, on Susquehanna street, from the northeasterly line of Corea street to the northeasterly line of Trinidad street, in said city. On the 19th of the same month the defendant Thomas Ashworth, as superintendent of streets, and said Philbin entered into a contract whereby the latter was to construct the said sewer according to the attached specifications and at a stipulated price. Shortly thereafter Philbin commenced the construction of the sewer, and completed the same before May 28, 1890. On the last-named day Ashworth, as such superintendent of streets, having accepted the work as done to his satisfaction, made an assessment to cover the sum due therefor under the contract, with incidental expenses. To the assessment he attached a diagram and warrant as required by the statute, and the same were recorded in his office.

The whole amount for which the assessment was made was $2,291.43, and the amount assessed against the plaintiff's property was $780.65, the balance being assessed to other persons and against other property than that owned by plaintiff.

On June 16, 1890, plaintiff paid, to satisfy his assessment, the sum of $755.65, the balance of $25 being thrown off by the contractor.

On December 29, 1890, the plaintiff notified Ashworth in writing that the specifications, under which the work of constructing the sewer was done, were not complied with in several particulars. To this notice Ashworth paid no attention, as his term of office expired four or five days, one of which was Sunday, thereafter, and he had no time.

On January 24, 1891, the plaintiff commenced this action against Ashworth and the sureties on his official

bond as superintendent of streets, and, after setting out
the facts as to the office held by Ashworth, the making
of the contract with Philbin, the construction of the
sewer, and the making and filing of an assessment for
the cost thereof, the complaint alleged "that by reason
of the premises it became the duty of the defendant,
Ashworth, as said superintendent, to see that said Phil-
bin followed said contract and the specifications thereto
attached, in the matter of constructing said sewer; but
that said Ashworth, wholly neglecting his duty in that
regard, permitted said Philbin to violate said contract
and specifications in the following particulars": then
setting out various particulars in which the contract and
specifications were violated. It was then alleged "that
by reason of the aforesaid violation of said contract
and specifications, said sewer is valueless for the pur-
pose for which it was intended, and is in constant dan-
ger of injury." It was further alleged that plaintiff's
lands were assessed for the sum of $780.65, and the
amount so assessed became a lien on said lands, to dis-
charge which plaintiff was compelled to pay, and did
pay on July 16, 1890, the whole of said sum; and that
by reason of the premises plaintiff had been damaged
in the sum of $780.65, for which he prayed judgment,
with interest from the date of payment.

To that complaint a general demurrer was interposed
and sustained, and plaintiff declining to amend, judg-
ment was entered that he take nothing by his action.
From that judgment an appeal was taken to this court,
where it was reversed. (*Goodsell* v. *Ashworth,* 96 Cal.
397.)

When the case went back to the court below, the
plaintiff amended his complaint by striking out the
averments as to the particulars wherein the contract
and specifications were not complied with in the con-
struction of the sewer, and by inserting in lieu thereof
more specific averments, and alleging "that by rea-
son of the said violation of said contract and speci-
fications, said sewer has become badly cracked in several

places, and valueless for the purposes for which it was intended, and is in constant danger of injury."

The defendants answered the complaint and denied, among other things, that the contract and specifications were violated in the construction of the said sewer, or that the plaintiff had been damaged by reason of any alleged violations thereof in the sum named, or in any sum whatever.

After a trial of the case, without a jury, the court below found "that all and singular the matters and things set out and alleged in the complaint are true, except that plaintiff paid to discharge the assessment lien mentioned in the complaint the sum of $755.65, instead of the sum of $780.65 as alleged." And as a conclusion of law the court found "that plaintiff was entitled to judgment against the defendants for the sum of $755.65, with interest thereon at the rate of seven per centum per annum from the sixteenth day of June, 1890, together with costs of suit." Judgment was accordingly entered against defendants on July 5, 1894, for the sum of $970, besides costs.

From that judgment and an order denying their motion for a new trial defendants have appealed.

In our opinion the court clearly erred in finding that the sewer was valueless for the purposes for which it was intended, and that by reason of the premises plaintiff had been damaged in the sum of $755.65, there being no evidence to justify such findings.

1. It is true that Thomas McMann, a witness for plaintiff, testified that he lived in the neighborhood at the time the sewer was constructed, and considered that it was not properly built. " It gives no drainage to the gutter. It is only six feet down; it is four feet too shallow. They started to build it up instead of sinking it down. That sewer is no use to the property there—no use at all, even if it didn't crack. It ought to be down in the ground ten feet below the grade." But it was not claimed that the sewer was not placed upon the grade established for it, and it was afterward admitted by

counsel for both sides " that the work was done according to the official grade of the street." As the opinion of the witness, that the sewer was of no use to the property, was based upon the theory that it was constructed on the wrong grade, it is of no weight and is entitled to no consideration.

The sewer contracted for and constructed was 560 feet long, and was oval-shaped, two feet three inches by three feet four inches in size. It was constructed partly below, partly on, and partly above the surface of the street as it was then found. And, according to the specifications its sides were to be covered and protected by embankments of earth which were to extend up and be at least two feet deep on the top of it.

It is alleged that a large part of the sewer was not, and never had been, protected by an embankment or earth filling of any kind, and that it remains throughout a considerable portion of its length in an exposed condition.

There was a conflict in the evidence as to whether the sewer was properly covered with earth by the contractor, and as to whether the embankments had since been washed down by rains and flowing streams of water, and trod down by animals. It was proved, however, by witnesses for the plaintiff, that the embankments could now be restored and made good at an expense of $300. It was also proved by witnesses for the plaintiff that the sewer was in good condition except where it was cracked; and that so much of it as was cracked could be reconstructed at a cost of $4 per foot.

One of the witnesses referred to, John E. Shepard, testified that he made a careful examination of the sewer, outside and inside, the day before the trial, and that he found it cracked at various places on the sides and top for a distance of 163 feet, and he said: " With the sewer in that condition, such as I found it, in order to make that a good sewer, I consider that 163 feet of that sewer would have to be reconstructed.'

Another of the witnesses referred to, C. B. Williams, testified that he had examined the sewer in its present condition and saw cracks in it on the sides and on top, "The cracks I saw were 62 or 63 feet, and it would cost. as I say, to repair those cracks (about $4 a foot). If a new sewer were put in there the whole extent of those cracks, the entire sewer would then be good. So far as the sewer itself it seemed to be very good work. That is all the defects that I saw, and that it was not covered. It seemed to be of good workmanship, but the trouble seems to have been that the filling on the side did not protect it. That is where the trouble was. I do not know anything about whether that was filled and the earth washed away."

It was also proved without conflict, that water and sewage were passing through the sewer without any apparent leakage.

Assuming then, in view of the evidence introduced by the plaintiff, that in order to put the sewer into good condition it was necessary to reconstruct 163 feet of it, still there can be found no warrant for saying that it was valueless for the purpose for which it was intended.

2. As to the question of damages. By section 20 of the street law (Stats. 1885, p. 160) it is provided that the superintendent of streets shall, before entering upon the duties of his office, give bonds to the municipality with sureties; "and should he fail to see the laws, ordinances, orders, and regulations relative to the public streets or highways carried into execution, after notice from any citizen of a violation thereof, he and his sureties shall be liable upon his official bond to any person injured in his person or property in consequence of said official neglect."

The whole sewer was 560 feet long, and the part of it requiring reconstruction was at most 163 feet long. That part could be reconstructed so as to make the whole sewer a good one for about $652, and the sewer could be embanked and covered with earth so as to meet

the requirements of the specifications for about $300, aggregating $952.  The plaintiff's assessment was about one-third of the whole assessment, and if he could be required to pay his proportion of the cost of reconstructing and covering the sewer, the amount would be only about $317.

Under these circumstances, how can it be said that the plaintiff was damaged in the full amount he paid to discharge the assessment against him?  We fail to see any valid ground for the conclusion reached by the court below.

The attorney for respondent has devoted a large part of his brief to the proposition that "the decision on the former appeal is decisive on this appeal."  It is said: "The case now before the court is precisely the same case as on the former appeal. . . . . It is, therefore, plain that the only questions in the case are as to whether or not the sewer was built in accordance with contract and specifications, and whether by reason of its not having been so built it was defective.  If these questions are answered in the affirmative, then the judgment and order must necessarily be affirmed."

The case now before the court is not the same as on the former appeal.  That appeal was from a judgment on demurrer, and the question was whether, under the street law, one claiming to have been injured in his person or property, in consequence of the official neglect of the superintendent of streets, had a remedy by action against the superintendent and the sureties on his bond, or was limited to an appeal to the board of supervisors.  The court said: "The contention of respondent's counsel is that the remedy by appeal to the board of supervisors is exclusive, and that by failing to avail himself of that remedy, appellant is without any remedy.  The law does not say so.  On the other hand, the same act that provides for an appeal to the board of supervisors gives the appellant a remedy by action upon the bond of the superintendent and his sureties."  The judgment was accordingly reversed, with directions to

the court below to overrule the demurrer, and allow the defendants to answer.

When the case went back to the court below the defendants did answer the complaint, denying most of its material averments. One of the issues tried was as to whether the sewer was valueless for the purposes for which it was intended, and another was as to the damages sustained by the plaintiff. These were not matters involved in the former appeal, and it seems idle to claim that they are *res judicata*.

The judgment and order appealed from should be reversed and the cause remanded for a new trial.

SEARLS, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and the cause remanded for a new trial.

MCFARLAND, J., HENSHAW, J., TEMPLE, J.